BABCOCK *v.* JUDD and another.

(*Circuit Court, D. Connecticut.* February 23, 1880.)

PATENT—NEW COMBINATION OF OLD INGREDIENTS—SUBSTITUTION OF NEW INGREDIENT—GILL *v.* WELLS, 21 Wall. 1.—The substitution of a new ingredient in a patented combination of old ingredients does not constitute an infringement.

Bill in Equity for alleged infringement of letters patent.

*Charles E. Gross,* for plaintiff.

*Charles E. Mitchell,* for defendants.

SHIPMAN, J. This is a bill in equity founded upon the alleged infringement of letters patent for an improved window-spring catch, or sash-holder, which were issued to Franklin Babcock on September 29, 1868. The plaintiffs are the owners of the patent.

The patented device consists of a cylindrical shell or socket, having a screw cut upon its outer periphery, into which socket is inserted, through an opening in the outer end, a sliding bolt. The bolt consists of a slender stem within the socket, and a sliding shoulder and thumb flange, which are exterior to the socket. Around the stem is a spiral spring, acting between the bottom of the socket and the sliding shoulder. The stem passes through a whole in the bottom of the socket, and is riveted at the end so as to limit outward movement. The hole acts as a necessary bearing for the stem, which is of small diameter as compared with the shell.

By means of the thumb flange the sliding bolt is pressed back against the spring. The whole is adapted to be screwed into the jamb of a window-frame, so that the thumb latch shall extend outward in front of the sash, and the angle of the bolt shall be so placed that it can enter into notches in the side of the sash to hold the window, and can be released by pressing back the bolt by means of the thumb flange.

The invention consisted merely in the combination of the different elements, all of which were old. The same form of bolt was manufactured many years ago in New Britain. The claim is for "the combination of the screw socket A, sliding

shoulder B, with flange C, stem *a*, and spring *b*, all as and for the purpose set forth."

The plaintiffs endeavor to have the claim construed to mean the combination of screw socket, a sliding bolt provided with a thumb pad and stem, and the spring, so that a sliding bolt, if provided with a thumb pad and a stem or leg of any sort, would be included within the patent. This is not the obvious meaning of the claim or of the specification. The specification describes the stem with more particularity than the patentee used in regard to the other parts of the combination. Indeed, but little description of the elements of the device was necessary or was given, as the different parts were well known, and were clearly shown in the drawings. The patentee intended to claim the combination of screw socket, sliding shoulder with flange, stem *a*, (the last two elements constituting a well-known form of bolt,) and the spring. The stem is made, in the patent, as important a member of the combination as any other.

This combination was novel and useful. It is admitted that the defendants have infringed the patent by the manufacture and sale of articles like Exhibit 4, which are the plaintiff's catch with a double stem.

The defendants have also made and sold articles which were known upon the trial as Exhibit 5. The question in the case is whether the form of sash-holder is an infringement.

The catch consists of a cylindrical screw socket, the bottom of the socket having no hole. The bolt has the plaintiff's sliding shoulder and thumb pad, but the defendants have, with a good deal of ingenuity, made a somewhat clumsy new hub or stem in place of stem A. Instead of the slender, round stem, whose diameter is no larger than the thickness of the shoulder, the diameter of the defendants' hub is greater than the thickness of the bottom of the bolt, whereby two shoulders are formed at the junction of the body and hub, which shoulders enlarge the bolt at that point so that movement outward or toward the window is limited. The hub has a socket to receive the spring, and its inner end has four radial arms or prongs, which extend outward far enough to span substan-

tially the inner chamber of the socket. These arms bear upon the inner walls of the socket; the shoulders at the other end of the hub bear also upon the side walls, so that the bolt is supported at each end, and is moved endwise with the case on these supports. The bottom of the shell forms an abutment to the spring, as in the plaintiff's catch.

The enlarged shoulders and radical arms prevent the bolt from being inserted in the case through its outer end. The case is left open at the inner end and the bolt is there inserted, the arm, upon which is the thumb pad, being bent over so as to bring its outer end substantially in front of the opposite end of the bolt. After the thumb pad has passed through the orifice in the outer end of the case, the bolt is turned one-quarter revolution, and is also passed through the orifice until it is stopped by the shoulders. The spring is then placed in the socket of the hub and the bottom of the case is placed in position.

This form of bolt was new at the date of the Babcock patent. It is not the Converse bolt, known as Exhibit 9, which, although it has the spring receiving socket in the hub, is differently constructed with respect to the sides of the hub, and to the position of the sliding shoulder. Had the defendants' bolt been known at the date of the patent, the general functions of the two bolts being the same, the substitution would have been simply a substitution of one well-known bolt for another, which performed the same office, and the change would have been formal. But the stem of the bolt is new, and while the general window locking function of the two bolts is the same, the change in the method of construction is not merely formal, but is a change in the principle upon which the stem is made. The plaintiff's stem had its bearing in the hole in the bottom of the case. This compelled the stem to protrude through the bottom of the case when the bolt was pressed inwards. The defendants' stem has its bearings entirely upon the walls of the case, which therefore is wholly closed except in front. Whether this is an advantage or not, I do not know. In consequence of the bolts coming in direct contact with the bottom of the case

less pressure may be brought to bear upon the defendants' spring than upon the plaintiff's, and it may be less liable to injury.

The law upon the subject of equivalents for one of the members of a combination of old ingredients has been frequently laid down of late by the supreme court. It is stated in *Gill* v. *Wells*, 22 Wall. 1, as follows: "By an equivalent in such a case it is meant that the ingredient substituted for the one withdrawn performs the same function as the other, and that it was well known, at the date of the patent securing the invention, as a proper substitute for the one omitted in the patented combination. Hence it follows that a party who merely substitutes another old ingredient for one of the ingredients of a patented combination is an infringer, if the substitute performs the same function as the ingredient for which it was substituted, and was well known at the date of the patent as a proper substitute for the missing ingredient. But the rule is otherwise if the ingredient substituted was a new one, or performed substantially a different function, or was not known at the date of the plaintiff's patent as a proper substitute for the one omitted, as in that event he does not infringe."

There must be a decree for an injunction, and for an accounting in regard to all articles made like Exhibit 4, with costs.